KETTLE RANGE CONSERVATION GROUP; Inland Empire Public Lands Council, Plaintiffs–Appellants,

v.

UNITED STATES BUREAU OF LAND MANAGEMENT, Defendant–Appellee,

and

Clearwater Land Exchange, Defendant–Intervenor–Appellee.

No. 98–35516.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 1998.

Decided July 20, 1998.

---

Marianne Dugan, Western Environmental Law Center, Eugene, Oregon, for appellants.

James P. Connelly, United States Attorney, and James R. Shively, Assistant United States Attorney, Spokane, Washington, for appellee United States Bureau of Land Management.

Paul A. Turcke, Moore & McFadden, Boise, Idaho, for intervenor–appellee Clearwater Land Exchange.

Before: REINHARDT, THOMPSON, and LEAVY, Circuit Judges.

PER CURIAM:

Kettle Range Conservation Group and Inland Empire Public Lands Council (together, Kettle Range) seek emergency relief pending their appeal from the district court's partial grant and partial denial of a permanent injunction. The partial injunction bars the Bureau of Land Management (BLM) from completing a sweeping exchange of public for private lands until it has fully complied with the requirements of the National Environmental Policy Act (NEPA). The district court declined, however, to take the more important—from a practical standpoint—action that Kettle Range had sought: it refused to rescind, pending BLM's compliance with NEPA, the contract between the BLM and defendant-intervenor, Clearwater Land Exchange (Clearwater), pursuant to which over 90% of the government's land involved in the exchange had already been transferred to private parties.

The district court determined that, without the joinder of the private entities that now had title to the land, it could not fashion a more equitable remedy or afford greater relief. It is this decision from which Kettle Range appeals. The BLM has not appealed the district court's finding that the agency violated NEPA by pursuing the land exchange without first giving it the "hard look" the Act requires, its injunction against any further transfers of land or its grant of summary judgment in favor of Kettle Range.

We deny the motion for emergency injunctive relief pending appeal. Kettle Range has neither joined nor made any effort to join the private entities to whom title to the public lands has been conveyed. While we do not sanction the BLM's conduct during this transaction, we have found no precedent for destroying the legal entitlements of absent parties in order to vindicate public rights. Nor can we say that the district court abused

its discretion in determining that equity might not be served by attempting to undo the completed portion of the transaction at this point—that is, after the new owners have taken certain irreversible actions, such as clearcutting the trees.

## FACTS

In a 1987 Record of Decision (ROD), the BLM formally adopted a "lands adjustment program" according to which its Spokane District Office is required to take steps to consolidate the lands under its management. This consolidation entails conveying large and small isolated parcels of land out of public ownership and acquiring new properties that adjoin lands already under the management of the BLM and other governmental agencies. The ROD addressed the program's environmental consequences only fleetingly, stating that "no significant impacts from landownership adjustments would occur to any resource."

Clearwater is a for-profit enterprise that arranges and brokers complex transactions whereby private lands that accord with an agency's acquisition objectives are conveyed to the agency in exchange for the agency's conveying public lands into private hands.[1] In January 1996, Clearwater approached the BLM and proposed just such an exchange. Most of the private parties on the receiving end of the proposed deal were timber companies seeking ownership of public forest lands for commercial harvest.

In its final configuration, the proposed exchange called for 44 parcels of public forest, totalling roughly 4,500 acres, to be traded for 8 tracts of private shrub-steppe, totalling roughly 25,000 acres. The BLM published two notices of exchange proposal, one in January 1996 and the other in July 1996, and received comments on the proposed action from private and governmental entities.

The Washington Department of Fish and Wildlife (DFW) expressed concern that some of the public land proposed to be exchanged possessed significant wildlife values, and recommended that the BLM retain those parcels. When the BLM proposed dropping some of the federal parcels from the exchange, however, Clearwater objected, warning that doing so could cause "the entire transaction [to] fail."

On September 23, 1996, BLM issued an environmental assessment of the proposed exchange, finding that it would have "no significant impact" on the environment. The document did not discuss alternatives to the proposed exchange; it made no mention of the DFW's concerns; and it did not indicate that a wildlife survey of the public lands had been conducted or what it showed.

Kettle Range protested the decision to the BLM, seeking a stay of the exchange. After both the Spokane District Manager and the Department of the Interior's Board of Land Appeals denied relief, plaintiffs filed suit in the Eastern District of Washington and moved for a preliminary injunction on June 2, 1997. The district court denied the motion for preliminary injunction, and plaintiffs appealed on June 6, 1997.

Within hours of the district court's decision, the BLM conveyed approximately half of the roughly 4,500 acres involved in this exchange to private parties. Several days later, on June 10, 1997, a panel of this court denied Kettle Range's emergency motion for an injunction pending appeal, and on December 3, 1997, a separate panel affirmed the district court's denial of a preliminary injunction.

The trade remained about half complete through the month of April, 1998. The district court was scheduled to consider Kettle Range's request for a permanent injunction on May 1, 1998. The district judge had inquired of plaintiffs' counsel whether any further transfers would occur before that date and had been advised, after counsel consulted with the BLM, that no such transfers were planned. When on May 1 the hearing was continued for an additional two weeks, the BLM informed plaintiffs' counsel that it would not wait any longer to carry out the next phase of the exchange. Counsel did not advise the district court of the BLM's statement, however, nor did she seek an emergency stay, and on May 1, 1998, the

---

**1.** 43 U.S.C. § 1716(a) authorizes land exchanges    that are in the public interest.

agency transferred roughly another 1800 acres to private parties pursuant to its agreement with Clearwater.

On May 19, 1998, the district court granted summary judgment in Kettle Range's favor, concluding upon its close review of the record that although the BLM had strong environmental misgivings about the transaction, and although NEPA mandates the exploration and evaluation of "all reasonable alternatives," the agency accepted the deal Clearwater proposed as a take-it-or-leave-it proposition. The district court also concluded that the Environmental Assessment failed to address the cumulative impacts of the proposed trade, as well as its project-specific impacts.

At the May 19 hearing, Kettle Range asked the district court both to halt the conveyance of the remaining 365 acres and to rescind the contract between the BLM and Clearwater, and thus to void the transfers that had already taken place. The district court enjoined completion of the transaction—the last 8%—pending NEPA compliance, but declined to rescind the contract, noting that Kettle Range had made no attempt to join the private parties who, by that time, had taken title to the land. Without their appearance, the court reasoned, it could not equitably rescind the contract; nor could it decide whether rescission would be in the public interest, given the likelihood that some of the public lands had already been clearcut. Kettle Range timely appealed, and sought an emergency injunction pending appeal.

## ANALYSIS

■ Appellants contest the district court's characterization of the private entities that obtained title to the formerly public lands as "necessary parties" with respect to the injunctive relief sought. We conclude that once the private parties took title, they became necessary in that respect.

Federal Rule of Civil Procedure 19(a) prescribes the "joinder of persons needed for just adjudication." A person "shall be joined if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so

situated that the disposition of the action in the person's absence may ... as a practical matter impair or impede the person's ability to protect that interest." Fed.R.Civ.P. 19(a) By these standards, the parties holding title to the lands were necessary because the district court could not grant complete relief without "impair[ing] or imped[ing]" their interests. *Id.*

■ Next, appellants argue that the private entities could not be joined as defendants in this lawsuit because NEPA affords no right of action against them. While it is true that federal courts generally have no basis for enjoining private parties under NEPA, it is not clear that this case would have fallen under the general rule. "Nonfederal defendants may be enjoined if 'federal and [nonfederal] projects are sufficiently interrelated to constitute a single federal action for NEPA purposes.'" *Fund for Animals, Inc. v. Lujan,* 962 F.2d 1391, 1397 (9th Cir.1992) (quoting *Friends of the Earth, Inc. v. Coleman,* 518 F.2d 323, 329 (9th Cir.1975)). It is possible that the transaction at the heart of this lawsuit-whereby, pursuant to its contract with Clearwater, the BLM transferred federal property directly to the absent private parties-would have justified joining the private parties and enjoining them, or issuing other relief not appropriate in their absence. However, whether or not the court was powerless to join the timber companies under NEPA and then to grant equitable relief against them pursuant to the statute, the separate question remains whether it could have equitably rescinded the contract without the private entities being parties to the action. Appellants argue that even if the timber companies *were* necessary parties under Rule 19, their joinder was not essential to the granting of the requested relief because "the full constraints of Rule 19 apply only to adjudications of 'private rights.'"

It appears clear that if, as appellants urge, the only "complete" relief the district court could grant was to rescind the already executed contracts and invalidate the private entities' title to the transferred land, those private entities would, ordinarily, be necessary parties under Rule 19. The federal courts have, however, recognized a "public

rights exception" to the usual rules of joinder when "litigation ... transcend[s] the private interests of the litigants and seek[s] to vindicate a public right." *Kescoli v. Babbitt*, 101 F.3d 1304, 1311 (9th Cir.1996) (citing *Kickapoo Tribe of Indians v. Babbitt*, 43 F.3d 1491, 1500 (D.C.Cir.1995)). The exception was first enunciated by the Supreme Court in *National Licorice v. NLRB*, 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799 (1940), where the Court wrote that in a case involving the protection and enforcement of public rights "there is little scope or need for the traditional rules governing the joinder of parties in litigation determining private rights." *Id.* at 363, 60 S.Ct. 569.

But the *National Licorice* Court restricted the applicability of the public rights exception to cases in which the third parties' interests at issue are not destroyed. That is, "the third parties [must be] left free to assert such legal rights as they might have acquired...." *Id.* at 366, 60 S.Ct. 569. While the *National Licorice* Court upheld the NLRB's termination of an unlawful "yellow dog" contract, it ordered the Board to revise its order by omitting language that the contracts were "void and of no effect." The Court also required the Board to state that the order was "without prejudice to the assertion by the employees [the non-parties to the action] of any legal rights they may have acquired...." *Id.* at 367, 60 S.Ct. 569.

In *Conner v. Burford*, 848 F.2d 1441 (9th Cir.1988), this court defined the contours of the public rights exception in NEPA cases. In *Conner*, an environmental group challenged the issuance of oil and gas leases by the BLM on the ground that an adequate Environmental Impact Statement had not been prepared. On appeal, several lessees claimed that they were necessary parties under Rule 19, but we held the public rights exception applicable. We found the exception appropriate because the legal entitlements of the absent parties were not "destroyed." To reach this conclusion we construed the district court's order as modi-

fying rather than voiding the leases,[2] and thus concluded that the lessees retained "many of the fundamental attributes of their contracts." *Id.* at 1461.

■ Here, title to the land already transferred has vested in the private parties. We have no doubt that an order declaring the executed portion of the land exchange void *ab initio* would "destroy the legal entitlements of the absent parties." *Id.* at 1459. As a result, this appeal is not amenable to the public rights exception.

We are also concerned that at this point it might be impractical to attempt to unscramble the eggs. Any such effort might produce results that are in fact not equitable. The public land to which title has already been transferred may well have undergone significant modification. Specifically, the timber may have been cut. In fact, Kettle Range has submitted evidence that such is the case, at least in some areas. Restoring the denuded land to the United States and compelling the government to return the natural land it received in exchange may well not serve the public interest.

### Conclusion

Because the district court correctly determined that it was without authority to rescind the contract in the absence of joinder of the private parties, we **DENY** the motion for emergency injunctive relief.

**MOTION DENIED**

REINHARDT, Circuit Judge, concurring:

I concur fully in the per curiam opinion. I write only to expand on one important point.

This is one of those cases in which the trial courts' and the court of appeals' preliminary decisions as to whether to grant injunctive relief pendente lite, including stays, is determinative of the ultimate outcome of the litigation. In such cases, judges must be particularly sensitive to the practical consequences

---

**2.** There were two types of leases at issue in *Conner:* No Surface Occupancy leases (NSO), and non-NSO leases. The court held that an EIS was required before the issuance of any non-NSO leases, but was not required before the

issuance of NSO leases. Thus the court construed its action as converting the non-NSO leases into NSO leases, and not as voiding the leases *en toto*.

of their initial action or inaction, not only because of the effect on the transactions involved, but because of the need to ensure that the court does not inadvertently lose its ability to enforce an important Congressional mandate. In this case, a substantial part of the land was transferred on the day after the district court initially denied a preliminary injunction, before a stay could be obtained from this court; and most of the remainder of the disputed property was transferred just before the district court's scheduled hearing on the permanent injunction—the hearing at which that court determined that the government's underlying conduct violated NEPA.

Whether or not the government's actions in this case served to deprive the courts of the ability to grant appropriate equitable relief, and whether or not the government's timing of the transfers was motivated by a desire to frustrate judicial jurisdiction, it is important that both private litigants seeking to enforce environmental statutes and judges presiding over environmental cases remain aware at all times of the practical aspects of the litigation, and guide their actions accordingly. Primary responsibility rests, of course, with the private litigants, as it is their duty to seek the necessary relief in a timely manner and to keep the court informed of all developments.

I do not intend by these observations to imply any criticism of counsel or the district judge in this case. I note that counsel struggled mightily against what must have appeared at times to be overwhelming odds. With respect to the district judge, while it would be inappropriate to express any view on the merits of his various decisions, other than at issue here, it is evident that he acted conscientiously and carefully throughout the proceedings. The result in this case is, nevertheless, unfortunate indeed. Although the district court held that the government violated NEPA and that it transferred public lands in violation of our environmental laws, those lands will now be clearcut, without more, by the private purchasers. That is not how our legal system is supposed to work.