Steven E. **KROLL**, Plaintiff,

v.

**INCLINE VILLAGE GENERAL IMPROVEMENT DISTRICT, a/k/a IVGID, a governmental subdivision of the State of Nevada; John A. Bohn, Gene Brockman, Bea Epstein, Chuck Weinberger, and Robert C. Wolf, individually and as Trustees of IVGID; Does 1 through 25 inclusive, each in their individual and official capacities, Defendants.**

No. 3:08–CV–166–ECR–VPC.

United States District Court,
D. Nevada,
Reno, Nevada.

Feb. 6, 2009.

---

Steven E. Kroll, Law Office of Steven E. Kroll, Crystal Bay, NV, pro se.

Stephen C. Balkenbush, Thorndal Armstrong Delk, et al., Reno, NV, for Defendants.

## Order

EDWARD C. REED, JR., District Judge.

This case arises from a dispute between an individual plaintiff, Steven Kroll, and defendants who include the Incline Village General Improvement District ("IVGID"), as well as the individual trustees of IVGID, sued in both their official and individual capacities. Before 1995, Plaintiff lived within the Crystal Bay General Improvement District ("CBGID"). In 1995, CBGID merged into IVGID. The crux of the dispute between Plaintiff and Defendants is that only some property owners in IVGID have full access to certain IVGID-owned beach properties. Those property owners whose lands were part of IVGID when IVGID acquired the beach properties in 1968 have full beach access. Those property owners whose lands became part of IVGID at a later date, such as Plaintiff, do not.

Three motions are currently pending before the Court. Plaintiff has filed an "Emergency Motion" (# 11) seeking an injunction against enforcement of "Policy and Procedure Number 136" ("Policy 136"), which is a "Policy Concerning Access to District Property and the Use of District Facilities for Expression." Plaintiff asks that Policy 136 be invalidated immediately so that he may exercise his First Amendment rights freely at the IVGID beach properties without being subjected to the allegedly unconstitutional restrictions that the policy imposes on him. Also pending before the Court is Defendants' Motion to Dismiss (# 8), as well as Plaintiffs Motion to Strike (# 9), which seeks to strike several affidavits filed in support of Defendant's Motion to Dismiss (# 8).

For the reasons set forth below, all of these pending motions will be denied.

## I. Factual and Procedural Background

The Incline Village General Improvement District is located on the north shore of Lake Tahoe. IVGID is a special purpose district organized under Chapter 318

of the Nevada Revised Statutes for "providing curbs, gutters, sidewalks, storm drainage, sewer disposal, water supply and recreational facilities." (D.s' Reply (# 20) Ex. E at 16.) Nevada law empowers IVGID to "acquire, construct, reconstruct, improve, extend and better lands, works, systems and facilities for recreation." NEV.REV.STAT. § 318.143.

In 1968, IVGID acquired certain lakefront beach properties abutting Lake Tahoe; access to these properties is at issue in this case. When IVGID acquired the properties, the deed contained a restriction limiting access to the beaches to members of IVGID as of 1968, their assigns, and IVGID's board of trustees. Today, IVGID issues recreation passes to individuals who have access to the beaches.

Prior to 1995, the Crystal Bay General Improvement District was a separate entity located adjacent to IVGID. In 1995, however, CBGID became part of IVGID: the merger was pursuant to a project to provide CBGID properties with sewer service. Plaintiff was a member of CBGID before 1995 and became a member of IVGID by virtue of the 1995 merger.

Despite the merger, IVGID did not extend beach access privileges to the former members of CBGID. The recreation passes issued by IVGID to former CBGID members allow them certain privileges, including access and reduced rates at other recreation facilities operated by IVGID. The recreation passes issued to former CBGID members, however, are marked prominently with the notation "NO BEACH." This restriction, originating in the deed to the beach properties, is implemented by section 62 of Ordinance No. 7, the "Recreation Pass Ordinance" adopted by IVGID.[1]

Several members of the public have started to demand access to the beaches for various reasons, such as asserting that the beaches are traditional public fora that must be open for First Amendment purposes. Apparently as a way of extending an olive branch to those who wanted to exercise their First Amendment rights near the beaches, IVGID adopted "Policy and Procedure Number 136" ("Policy 136"). In part, the policy attempts to open limited areas of the beach properties, such as the parking lots and the adjoining sidewalks, to the public. Policy 136 continues to exclude the general public from the remainder of the beach properties, including the beaches themselves, by designating those areas as "non-public forum areas."

Plaintiff seeks to challenge the validity of Ordinance No. 7 and Policy 136. He contends that Ordinance No. 7 violates his rights under the First and Fourteenth Amendments of the United States Constitution and seeks redress under 42 U.S.C. §§ 1983 and 1988. Further, he argues that Policy 136 is void on its face in that it unconstitutionally prohibits speech at a traditional public forum.

Plaintiff originally filed suit in the First Judicial District Court of the State of Nevada on March 14, 2008. Defendants removed (# 1) the action on April 2, 2008, invoking this Court's federal question jurisdiction. Plaintiff's First Amended Complaint (# 3) was filed on April 16, 2008. On April 30, 2008, Defendants filed a Motion to Dismiss (# 8) Plaintiff's First Amended Complaint (# 3). Plaintiff opposed (# 12) the motion (# 8), and Defendants replied (# 20).

On May 3, 2008, Plaintiff filed a Motion to Strike (# 9) several affidavits submitted in support of Defendants' Motion to Dis-

---

**1.** This section reads in full: *"Deed Restrictions. Parcels annexed to the District after May 30, 1968, are not eligible for District* beach access as per deed restrictions listed on the beach property." (D.s' Opp. (# 21) Ex. 2 at 48.)

miss (# 8). Defendants opposed (# 14) Plaintiff's motion (# 9), and Plaintiff replied (# 19).

IVGID adopted Policy 136 on April 30, 2008. Plaintiff filed his "Emergency Motion to Enjoin Defendant IVGID's Policy No. 136 Regulating Speech as Void on its Face under the First Amendment" (# 11) on May 6, 2008, and filed a supplement (# 13) on May 15, 2008. Defendants opposed (# 21) Plaintiff's emergency motion (# 11), and Plaintiff replied (# 24).

On October 31, 2008, the Court held a hearing regarding the pending motions, during which each side presented evidence and argument. At the conclusion of the hearing, the Court took the matter under submission.

On December 16, 2008, the parties stipulated (# 43) to the filing of Plaintiff's Second Amended Complaint ("SAC") (# 44). The Second Amended Complaint is a wide-ranging document seeking damages, as well as declaratory and injunctive relief. Specifically, Plaintiff alleges that IVGID's recreation pass ordinance, Ordinance No. 7, which denies Plaintiff access to the beach properties, violates his rights under the First and Fourteenth Amendments of the United States Constitution, and seeks redress pursuant to 42 U.S.C. §§ 1983 and 1988. Plaintiff also alleges state law claims for breach of fiduciary duty, violation of Nevada's Open Meeting Law, and breach of Nevada water ordinances governing public utilities.

The Court has accepted the parties' stipulation (# 43) that all motions pending before the Court will be deemed to refer to the Second Amended Complaint without further action of the parties. Plaintiff's Fifth Amendment claims, however, included in the First Amended Complaint, have been voluntarily withdrawn and are not included in the Second Amended Complaint. Thus, to the extent that Defendant's Motion to Dismiss (# 8) addresses those withdrawn claims, it is moot.

## II. Plaintiff's Emergency Motion for Preliminary Injunction

Plaintiff's Second Amended Complaint includes claims that his First Amendment rights have been infringed. (SAC ¶¶ 52–68 (# 44).) Plaintiff's Emergency Motion (# 11), however, is brought specifically in response to the April 30, 2008, adoption by IVGID of "Policy and Procedure No. 136," which is described as a "Policy Concerning Access to District Property and the Use of District Facilities for Expression." Among other things, Policy 136 opens certain parts of the beach properties—specifically, "the parking lots, the walkways within and adjacent to the parking lots, and the sidewalks adjacent to any public entrance to any building open to the public"—to the public for purposes of exercising First Amendment rights. The remainder of the beach properties are denoted "non-public forum areas," access to which requires a recreation pass granting beach access. Plaintiff argues that this policy is void on its face [2] under the First Amendment, and he seeks to enjoin IVGID from enforcing its provisions.

2. At oral argument on these motions, Plaintiff asserted that his challenge to Policy 136 was both a facial challenge and an "as applied" challenge. Such an assertion is in tension with the briefing for the motion. The caption includes the phrase "void on its face"; Plaintiff argues that certain evidence leads to a conclusion of "facial invalidity" (P.'s Motion (# 11) at 7.). In any case, neither the papers, nor any evidence produced at the hearing, demonstrate a sufficient basis for Plaintiff to sustain an "as applied" challenge to Policy 136. Although Plaintiff testified that he was given a packet of materials related to Policy 136 at the gates to the beach properties upon visiting, he presented no evidence that he was prevented from engaging in any particular activities by IVGID employees. Our discussion here, therefore, will focus on Plaintiff's facial challenge to Policy 136.

As an initial matter, we must address whether this Court can consider Plaintiffs Emergency Motion (# 11) given the circumstance that Policy 136 is not mentioned in Plaintiff's operative complaint. Indeed, it would have been impossible for Plaintiff's First Amended Complaint to contain any claims specifically addressing Policy 136 because, as noted above, Policy 136 was enacted after the filing of the First Amended Complaint.

 The appropriate procedure for a plaintiff to follow to bring a case up to date with events that have taken place since the filing of an original pleading is to file a supplemental pleading pursuant to Federal Rule of Civil Procedure 15(d). The filing of a supplemental pleading is not a matter of right, but rather requires leave of court, which Plaintiff here did not seek.[3] Had Plaintiff sought such leave, however, it would have been granted: Rule 15(d) gives district courts broad discretion in allowing supplemental pleadings, and application of the rule is favored. *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir.1988) (noting that supplemental pleadings should be allowed as a matter of course "unless some particular reason for disallowing them appears").

Plaintiff could have included mention of Policy 136 in the Second Amended Complaint instead of relying on the discretion of the Court to treat his Emergency Motion (# 11) and its supplement (# 13) as supplemental pleadings. Nevertheless, we can see no prejudice to Defendants in reaching the merits of Plaintiff's motion, even if it is procedurally irregular. The parties have had every opportunity to ad-dress the relevant questions of law and fact regarding the merits of Plaintiff's claims, both in briefing and in the hearing on the matter. We will therefore treat Plaintiff's motion and its supplement as mis-captioned supplemental pleadings. These supplemental pleadings raise events that occurred after the filing of the First Amended Complaint and seek preliminary injunctive relief on the basis of those facts. They are applied to the Second Amended Complaint by operation of the parties' stipulation.[4]

### A. Standing

 Defendants have challenged Plaintiff's standing to bring a facial challenge to Policy 136. To have standing, a plaintiff must establish three things: (1) a "distinct and palpable" injury in fact (2) that is "fairly traceable" to the challenged action, and (3) relief from the injury must be "likely to follow" from a favorable decision. *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (internal citations and quotation marks omitted); *see Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1033 (9th Cir.2006) (citing *Allen*). Plaintiffs asserting "a facial challenge to an ordinance may establish standing by alleging that they have 'modified [their] behavior' as a result of the ordinance, such as 'by choosing locations other than [the areas subject to the ordinance.]'" *Long Beach Area Peace Network v. City of Long Beach*, 522 F.3d 1010, 1018 (9th Cir.2008) (quoting *Food Not Bombs*, 450 F.3d at 1034) (alterations

---

**3.** Rule 15(d) provides in part that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."

**4.** To do otherwise would be an exercise in empty formalism: after denial of the motion on a procedural basis, Plaintiff would seek leave to file a supplemental pleading or amended complaint, which would be granted. He would then re-file his motion, which again would have to be briefed and argued. This would be a waste of resources for all involved. *See Keith*, 858 F.2d at 473 (noting that Rule 15(d) is intended as a "tool of judicial economy and convenience").

in *Long Beach*). Further, "a plaintiff need not apply for a benefit conditioned by a facially unconstitutional law, but must demonstrate a serious interest in subjecting itself to the challenged measure, and must demonstrate that the defendant is seriously intent on enforcing the challenged measure." *Id.* at 1018 (alterations, internal citations and quotation marks omitted).

■ Plaintiff does not explicitly allege that he has "chosen locations other than the areas subject to the ordinance," as *Long Beach* suggests would be one way to establish standing. He avers in his affidavit attached to his Emergency Motion (# 11) a strong interest in campaigning on political issues at the beach properties. (P.'s Affidavit ¶¶ 5, 6.) He also claims that at least one place where he had previously exercised his First Amendment rights has been shut off to him by the new ordinance. (*Id.* ¶ 4.) He further asserts, albeit vaguely, that the policy has provisions that chill his speech even at those IVGID properties where he has access with his current recreation pass. (*Id.* ¶ 5.) These alleged facts are sufficient to satisfy the Long Beach requirement that Plaintiff allege he has modified his behavior as a result of the ordinance, and that he demonstrate a "serious interest in subjecting [himself] to the challenged measure."

It also appears that IVGID is "seriously intent on enforcing the challenged measure," in the meaning of *Long Beach.* Ordinance No. 7—the main ordinance governing recreation passes in IVGID—gives authority to the District to suspend a member's privileges (i.e., suspend the member's recreation pass) if he or she violates any law or ordinance. (D.s' Opp.

(# 21) Ex. 2 at 49.) Thus, if Plaintiff attempts to exercise his First Amendment rights at one of the beach properties in violation of Policy 136, then he could potentially lose his privileges at other IVGID recreational facilities, such as the golf course and ski resort.

Plaintiff need not violate Policy 136 and potentially lose his recreation pass in order to test the contours of his First Amendment rights. Plaintiff has standing to bring a facial challenge to Policy 136 because he has a serious interest in subjecting himself to the challenged measure, and IVGID appears seriously intent on enforcing it.

### B. Standard of Review for Preliminary Injunction

A party seeking a preliminary injunction must meet one of two tests: traditional or alternative. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir.1994). The traditional test requires a plaintiff to show the following: (1) it will probably prevail on the merits; (2) it will suffer irreparable injury if injunctive relief is not granted; (3) in balancing the equities, the defendant will not be harmed more than the plaintiff is helped by the injunction; and (4) granting the injunction is in the public interest. *Id.* In the alternative, a court may issue a preliminary injunction if the plaintiff shows either (1) "a combination of probable success on the merits and the possibility of irreparable injury"; or (2) "that serious questions are raised and the balance of hardships tips sharply in his favor."[5] *Id.*

■ Although phrased as such, the alternative test is less an either/or formulation than it is a type of sliding scale. The

5. We note that a recent Supreme Court case has called into question the Ninth Circuit's "possibility" standard in the first part of the alternative test, requiring instead a "likelihood" of irreparable injury in all cases. *Win-*

*ter v. Natural Res. Def. Council, Inc.*, — U.S. —, 129 S.Ct. 365, 375, 172 L.Ed.2d 249 (2008). We need not address this development, however, in light of our conclusions below.

two prongs represent " 'extremes of a single continuum,' rather than two separate tests." *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999) (quoting *Sega Enters. v. Accolade, Inc.*, 977 F.2d 1510, 1517 (9th Cir.1992)). That is, the more the balance of hardships tips in favor of the plaintiff, the less probability of success must be demonstrated. *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir.1999). Whichever test is applied, a preliminary injunction should only be granted if the movant does not have an adequate remedy at law. *Stanley*, 13 F.3d at 1320 (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 & n. 8, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)).

### C. Analysis

██ Plaintiff here seeks to advance his claim through the traditional, and not the alternative, test. Of the four parts of that test, however, only the first, regarding probability of success, is outcome-determinative in the circumstances of this case: the other three parts turn on the result of the first. A party seeking preliminary injunctive relief in a First Amendment context "can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim." *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 973 (9th Cir.2002). Similarly, IVGID would have no legitimate interest in enforcing an unconstitutional ordinance, nor would enforcement of such an ordinance be in the public interest. *See Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 247 (3d Cir.2003), *aff'd*, 542 U.S. 656, 124 S.Ct. 2783, 159 L.Ed.2d 690 (2004). Thus, the preliminary injunction analysis here turns on the likelihood of success of Plaintiff's claim.

In order to demonstrate that he will probably prevail on the merits, Plaintiff must show that the restrictions of Policy 136 are impermissible under the First Amendment. IVGID does not dispute that Plaintiff's proposed activities constitute speech. Thus, the "extent to which the Government may limit access depends on whether the forum is public or nonpublic." *Preminger v. Principi*, 422 F.3d 815, 823 (9th Cir.2005) (internal quotation marks omitted). We will now turn, therefore, to analysis of the relevant forum. After determining how the forum is best classified, we will then analyze whether the restrictions of Policy 136 are permissible under the relevant standards.

### 1. Forum Analysis

██ In general, public property falls into one of three categories: (1) a traditional public forum; (2) a designated public forum; or (3) a nonpublic forum. *Ctr. for Bio–Ethical Reform, Inc. v. City & County of Honolulu*, 455 F.3d 910, 919 (9th Cir.2006). Regulations on a traditional public forum—property that has always been open to the public, such as public parks or sidewalks—and regulations on a designated public forum—property that has been opened to all or part of the public—are subject to strict scrutiny. *Id.* Restrictions on all remaining public property—that is, nonpublic fora—must only be viewpoint neutral and reasonable. *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992).

██ The parties dispute how the beach properties should be characterized. Plaintiff argues that they are public fora, falling under precedent relating to public parks. Defendants argue that the beach properties in their entirety were always nonpublic fora until the adoption of Policy 136, which creates designated public fora on portions of the properties, while the remainder of the properties continue to be nonpublic fora. We agree with Defendants that the beach properties are non-

public fora, except for those areas which have become designated public fora as a result of the adoption of Policy 136.

■ Plaintiff's argument that the beach properties should be treated as public fora focuses on the features of the beach properties that make them resemble a park.[6] Those features, however, cannot be the end of the analysis. There is no doubt that "'[p]ublic places,' such as streets, sidewalks, and parks, historically associated with the free exercise of expressive activities, are considered, without more, to be 'public forums.'" *United States v. Grace,* 461 U.S. 171, 177, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983). However, the "Government's ownership of property does not automatically open that property to the public." *United States v. Kokinda,* 497 U.S. 720, 725, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990). Moreover, "[a]reas that are traditionally considered public fora may be classified as nonpublic" in some circumstances. *Preminger,* 422 F.3d at 824 n. 5.[7]

■ The Ninth Circuit has emphasized evaluating three factors in determining whether an area constitutes a traditional public forum: "1) the actual use and purposes of the property, particularly status as a public thoroughfare and availability of free public access to the area; 2) the area's physical characteristics, including its location and the existence of clear boundaries delimiting the area; and 3)[the] traditional or historic use of both the property in question and other similar properties." *Am. Civil Liberties Union of Nev. v. City of Las Vegas,* 333 F.3d 1092, 1100–01 (9th Cir.2003) (internal citations omitted) (hereinafter *"ACLU of Nevada"*).

The actual use and purposes of the beach properties at issue here weigh against finding that they are public fora. The beach properties are not public thoroughfares, and there has never been free public access to the area. The actual use and purposes of the beach properties are to provide a beach recreation area for a limited set of property owners, not to provide a general town commons, as is the case with a public park. The adoption of Policy 136, which opens up certain limited portions of the properties to the public for First Amendment purposes, cannot reasonably be considered to have changed this conclusion: the public is still excluded from all but small portions of the properties, and the public's access to even those areas is limited to "exercise of expression,

**6.** *See Gerritsen v. Los Angeles,* 994 F.2d 570, 576 (9th Cir.1993) (refusing to distinguish certain "blue-line" areas of a public park from the rest of the park); *United States v. Frandsen,* 212 F.3d 1231, 1237 n. 4 (11th Cir.2000) (finding district court erred in finding a park to be a non-public forum "based solely upon its beach characteristics"); *Smith v. Fort Lauderdale,* 177 F.3d 954, 956 (11th Cir.1999) (finding that beach park is a traditional public forum); *Naturist Soc'y, Inc. v. Fillyaw,* 958 F.2d 1515, 1522 (11th Cir.1992) (concluding that John D. MacArthur Beach State Park in Florida is a traditional public forum); *Paulsen v. Lehman,* 839 F.Supp. 147, 161 (E.D.N.Y.1993) (finding that Jones Beach State Park in New York is a "public forum for First Amendment purposes"); *Leydon v. Town of Greenwich,* 257 Conn. 318, 777 A.2d 552, 570 (2001) (finding that a municipally owned beach park on Long Island Sound is a public park for purposes of First; Amendment analysis).

**7.** Plaintiff relies on *Leydon* for the proposition that because a government-owned property has the "objective characteristics" or "traditional ... elements" of a park, it must be a public forum. 777 A.2d at 569. Although the Connecticut Supreme Court discusses federal constitutional rights in that opinion, the holding in *Leydon* is based on the Connecticut state constitution, which provides greater protection for expressive activity than that provided by the First Amendment of the federal constitution. *Id.* at 573–75. The *Leydon* court's discussion in dicta of federal law is not entirely consistent with Ninth Circuit precedent, and is therefore not persuasive.

speech, and assembly," rather than general access for, say, recreational purposes.

The physical characteristics of the beach properties pull in two directions, with regard to the second factor enumerated by *ACLU of Nevada.* On the one hand, the properties resemble public parks, in that they have many of a park's "traditional elements," as Plaintiff has emphasized: trees, grass, picnic areas, etc. However, there are also clear boundaries delimiting the area, including gates, signs, and IVGID employees who control access to the properties. These boundaries are not cosmetic differences, but rather clearly demarcated boundaries that necessarily would alter visitors' expectations of its public forum status. *Cf. Gerritsen,* 994 F.2d at 576 (finding "blue line" area of park was "indistinguishable from other sections of the park in terms of visitors' expectations of its public forum status"); *Venetian Casino Resort, L.L.C. v. Local Joint Executive Bd. of Las Vegas,* 257 F.3d 937, 945 (9th Cir.2001) (holding that cosmetic differences, such as distinctive pavement and landscaping, are insufficient to distinguish an area from surrounding public fora); *Freedom from Religion Found., Inc. v. City of Marshfield,* 203 F.3d 487, 494 (7th Cir.), *as amended,* (2000) ("[N]o visual boundaries currently exist that would inform the reasonable but unknowledgeable observer that the Fund property should be distinguished from the public park."); *see also Grace,* 461 U.S. at 180, 103 S.Ct. 1702 (noting that there is no indication to visitors that the sidewalks surrounding the United States Supreme Court building are part of "some special type of enclave"). Thus, this factor appears to weigh somewhat against a finding that the beach properties are public fora, although not unambiguously so.

The third factor described by the Ninth Circuit in *ACLU of Nevada,* the traditional or historic use of the property and other similar properties, also pulls in two directions. As noted above, the physical characteristics of the beach properties make them similar in many ways (except for being open to the public) to public parks, which of course are traditional public fora. On the other hand, the beach properties have never been used as public parks, but only as beach recreation areas for the limited set of IVGID property owners whose property was a part of IVGID as of 1968. Thus, this is not a circumstance where the Government seeks to withdraw a property from public forum status; rather the beach properties historically never were used as public fora. *Cf. Grace,* 461 U.S. at 180, 103 S.Ct. 1702 (stating that the government "may not by its own *ipse dixit* destroy the public forum status of streets and parks which have historically been public forums") (quoting *United States Postal Serv. v. Greenburgh Civic Ass'ns,* 453 U.S. 114, 133, 101 S.Ct. 2676, 69 L.Ed.2d 517 (1981)); *Kreisner v. City of San Diego,* 1 F.3d 775, 785 (9th Cir.), *as amended,* (1993) (expressing "grave doubts" about city's ability to withdraw a public park from its status as a traditional public forum). We conclude that this factor, too, weighs somewhat against finding that the beach properties are public fora, although not unambiguously so.

Thus, each of the three factors enumerated in *ACLU of Nevada*—especially the first—weigh to some degree in favor of finding the beach properties are nonpublic fora. We therefore conclude that the beach properties were nonpublic fora in their entirety prior to the adoption of Policy 136. Policy 136 intentionally opened up parts of these previously nonpublic fora to public discourse, so any restrictions on speech imposed by Policy 136 in these areas must be analyzed under the standard appropriate for designated public fora. *See Ctr. for Bio–Ethical Reform,*

*Inc.*, 455 F.3d at 919. The areas of the properties not opened to the public by Policy 136 must be analyzed as nonpublic fora.

### 2. Restrictions on Speech

▇▇▇▇ The government may restrict access to a nonpublic forum so long as the restrictions are reasonable in light of the purpose served by the forum and are viewpoint neutral. *Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.*, 473 U.S. 788, 806, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985); *Sammartano*, 303 F.3d at 965. Here, a person seeking entrance to the nonpublic areas of the beach properties must only have a recreation pass granting beach access: there is no indication of any viewpoint restriction. Moreover, such a restriction on access appears reasonable in light of the purpose of the forum: it reasonably fulfills IVGID's legitimate need to reserve the recreation areas of the beach properties for their intended use as beach recreation areas, rather than as fora for public discourse. *See Sammartano*, 303 F.3d at 966–67 (noting that there must be evidence that the restriction reasonably fulfills a legitimate need, but that the government need not choose the least restrictive alternative when regulating speech in a nonpublic forum).

Defendants also argue that Policy 136 places only reasonable time, place, and manner restrictions on the "designated public forum areas" of the beach properties. In a public forum or designated public forum, the government's power to impose restrictions on speech is much narrower than in a nonpublic forum, though reasonable time, place, or manner restrictions on speech are permissible. *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984).

▇▇▇▇ If the restrictions on speech in designated public forum areas meet the following four requirements, they are valid: (1) they are content-neutral; (2) they are narrowly tailored to serve a significant government interest; (3) they leave open ample alternative channels of communication; and (4) they do not grant unfettered discretion to a permitting or licensing official. *Long Beach*, 522 F.3d at 1022 (citing *Clark*, 468 U.S. at 293, 104 S.Ct. 3065, and *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992)). Each of these requirements is addressed separately below.

#### a. Content–Neutrality.

▇▇▇▇ The first criterion is that the restriction must be content-neutral. That is, the restriction must be based on something other than the content of the speech. *Clark*, 468 U.S. at 293, 104 S.Ct. 3065. A law is content-based rather than content-neutral if "the main purpose in enacting it was to suppress or exalt speech of certain content, or it differentiates based on the content of speech on its face." *Am. Civil Liberties Union of Nev. v. City of Las Vegas* ("*ACLU of Nevada II*"), 466 F.3d 784, 793 (9th Cir.2006). Although "an improper censorial motive" is sufficient, such a motive is not necessary to render a regulation content-based. *Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 117, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991). If a regulation "distinguish[es] favored speech from disfavored speech on the basis of the ideas or views expressed," it is content-based. *Turner Broad. Sys. v. Fed. Commc'ns Comm'n*, 512 U.S. 622, 643, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994).

Defendants argue that Policy 136 is content-neutral because those areas designated as "public forum areas" by the policy are open to all individuals wishing to use those areas for purposes of expression,

without any restriction on content. (D.s' Opp. 5(# 21).) This argument is, however, in some tension with the text of Policy 136. The policy indicates that any First Amendment activities "must be consistent with the maintenance and operation of District real properties and facilities, and must not interfere with the intended use of such facilities ... [or] result in a violation of the privacy or rights of others." (P.'s Motion (# 11) Ex. A at 2–3.) It seems that these rights of others may include protection "from activities or practices which would make them involuntary audiences, or which are inappropriate to the purpose and enjoyment of a specific real property and facility." (*Id.* at 1.)

Such language is open to interpretations that would run afoul of First Amendment jurisprudence. Specifically, it may be read to grant a "heckler's veto," that is, allowing exclusion or silencing of speech that is offensive or disturbing to the majority of Incline Village's beach-going public. So-called "heckler's vetoes" are unconstitutional. *See Gathright v. City of Portland,* 439 F.3d 573, 578 (9th Cir.2006) ("the way to oppose offensive speech is by more speech, not censorship, enforced silence or eviction from legitimately occupied public space").

In *Gathright,* however, the heckler's veto at issue was explicit: those with permits to hold an event in a public forum were given the discretion to exclude other private citizens on any—or no—basis from that event. *Id.* at 577. The language in Policy 136 is vague enough that it does not come within the proscriptions of this line of First Amendment jurisprudence on its face. Such a reading of Policy 136 is supported by the circumstance that the most concerning language, about protecting users of the facilities from becoming "involuntary audiences," is in the "Preamble," rather than the substantive provisions, of the policy. (P.'s Motion (# 11) Ex. A at 1.)

Policy 136 appears on its face to be content-neutral, even if the language of the policy is somewhat open to interpretations that could violate the First Amendment as applied.

### b. Narrowly Tailored/Significant Government Interest

Under the second criterion, the government must show (1) that the governmental interest is substantial and "unrelated to suppression of expression," *Baldwin v. Redwood City,* 540 F.2d 1360, 1365 (9th Cir.1976), and (2) that the regulation is narrowly tailored to meet that interest, *Ward v. Rock Against Racism,* 491 U.S. 781, 797, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).

The first aspect is substantial governmental interest. The Supreme Court has recognized substantial governmental interests in, among other things, regulating competing uses of public fora, *Forsyth County,* 505 U.S. at 130, 112 S.Ct. 2395, in maintaining parks in an "attractive and intact condition," *Clark,* 468 U.S. at 296, 104 S.Ct. 3065, and in regulating "streets to protect and insure the safety, comfort, or convenience of the public," *Murdock v. Pa.,* 319 U.S. 105, 116, 63 S.Ct. 870, 87 L.Ed. 1292 (1943).

There is little question that the governmental interests asserted as the motivation for Policy 136 are substantial. (P.'s Motion (# 11) Ex. A at 1–3.) Plaintiff objects to language in the policy that requires that any expressive activities "must not interfere ... with parking, the flow of vehicular traffic, and ingress to and egress from the property and all buildings and facilities." (P.'s Motion (# 11.) Ex. A at 2–3.) Taken in isolation, this language may indeed be too absolute to comply with First Amendment jurisprudence: although the public safety interests in regulating street use

are substantial government interests, "those interests must give way on occasion to the temporary dedication of the streets to picketing and parading." *ACORN v. City of Phoenix*, 798 F.2d 1260, 1267 n. 5 (9th Cir.1986). Nevertheless, Policy 136 may contemplate those interests "giving way" in the meaning of *ACORN*: the policy states that IVGID does not propose to regulate the% exercise of expressive activity "except as consistent with applicable law." (P.'s Motion (# 11) Ex. A at 1.)

As to the second aspect, whether a regulation is narrowly tailored, the Court must determine "whether the clauses serve a substantial government interest without restricting substantially more speech than necessary, and whether there are obvious alternatives that would achieve the same objectives while restricting less speech." *Long Beach*, 522 F.3d at 1038.

Under this standard, it appears that Policy 136 is narrowly tailored. On its face, Policy 136 does not restrict substantially more speech than necessary. Indeed, it is unclear that Policy 136 would in fact restrict any speech protected under the First Amendment, except for the requirement that those wishing to speak in the "non-public forum areas" have a recreation pass granting them beach access. No obvious alternatives that would achieve the same objectives while restricting less speech have been proposed. Some of the provisions of the policy, such as the mandate that expressive activity not disrupt traffic, may result in violations as applied, as noted above. But these provisions do not appear to restrict substantially · more speech than necessary on their face.

### c. Ample Alternative Channels

The third criterion applicable to time, place, and manner restrictions is that regulations "must leave open ample alternatives for communication." *Forsyth County*, 505 U.S. at 130, 112 S.Ct. 2395. Several considerations are relevant to this

analysis. First, "an alternative is not ample if the speaker is not permitted to reach the intended audience." *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir.1990) (internal quotation marks omitted). Second, if the location of the expressive activity is part of the expressive message, alternative locations may not be adequate. *Galvin v. Hay*, 374 F.3d 739, 756 (9th Cir.2004). Third, we consider the opportunity for spontaneity in determining whether alternatives are ample, particularly for political speech. *NAACP, W. Region v. City of Richmond*, 743 F.2d 1346, 1356 (9th Cir.1984). Fourth, we consider the cost and convenience of alternatives. *City of Ladue v. Gilleo*, 512 U.S. 43, 57, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994).

Regarding the first part of this test: Policy 136 opens the parking lot, sidewalks, and other areas outside the entrance to the beach areas and buildings of the properties at issue here to the public for expressive purposes. The intended audience of Plaintiff is apparently beach-goers. Even if Plaintiff cannot speak to beach-goers on the beach, under Policy 136, he will still be able to reach this audience as they enter the beach through the parking lot and entrance areas. Policy 136 would appear, therefore, not to impinge on Plaintiff's ability to reach his intended audience, even if he may not be able to do so at the precise location he would prefer.

The second part of this analysis also seems to weigh in Defendants' favor. It does not appear that Plaintiff's expressive goal, a desire to preach liberal politics to the apparently more conservative IVGID citizenry, is tied to the location of the proposed expressive activity in any meaningful way.

The "opportunity for spontaneity" test relates to the need to apply for a permit in

advance of the expressive activity. *See City of Richmond,* 743 F.2d at 1356. Policy 136 does not impose any permit requirement for speech in the "public forum areas." It does not impose any additional permit requirement, beyond the recreation pass requirements for entrance to the area generally, for speech in the "non-public forum areas." Thus, it does not appear that this portion of the analysis applies in this case, or if it does apply, it weighs in favor of Defendants.

The final consideration is the cost and convenience of alternatives. Neither party addresses this factor in any detail, and it is impossible to evaluate absent some suggested alternative. We conclude that Policy 136 leaves open ample alternative channels for communication.

### d. Discretion

■ The fourth criterion is the prohibition on regulations that confer unbridled discretion on a permitting or licensing official. *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150–51, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). Regulations must contain "narrow, objective, and definite standards to guide the licensing authority," *id.* at 151, 89 S.Ct. 935, and must require the official to "provide [an] explanation for his decision," *Forsyth County,* 505 U.S. at 133, 112 S.Ct. 2395. The standards must be sufficient to "render [the official's decision] subject to effective judicial review." *Thomas v. Chi. Park Dist.,* 534 U.S. 316, 323, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002). This requirement applies to an official's "authority to condition the permit on any additional terms" not stated in the ordinance. *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 772, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988).

Plaintiff reads Ordinance No. 7 as granting the General Manager of IVGID licensing authority, in that the General Manager may interpret the policy and issue rules

implementing it. (P.'s Reply 8 (# 24).) This reading, however, is not consistent with the language of Policy 136 or Ordinance No. 7. Policy 136 vests discretion to make further rules and regulations in support of the stated goals of the policy with the "District." Policy 136 does not list any specific person, or individual job title, as having the authority to make or enact any rules relating to regulation of expressive activity. In Ordinance No. 7, the General Manager is given authority to interpret and issue rules regarding Ordinance No. 7, but not other ordinances. (D.s' Opp. (# 21) Ex. 2 at 51.) Defendants insist that Policy 136 "vests no discretion in [General Manager] Horn concerning how the terms and conditions of the policy will be enforced." (D.'s Opp. (# 21) at 11.) From the text of Policy 136, it seems Defendants are correct.

It may be that the General Manager of IVGID initially understood Ordinance No. 7 to grant him authority regarding Policy 136 in the manner that Plaintiff describes. It is hard to explain the existence of the "basic rules to support the successful execution of Policy 136," of which Plaintiff complains in the Supplement (# 13) to his motion, unless the General Manager believed he had the authority to implement such rules. There is no evidence, however, that these "basic rules" were ever implemented, though they were apparently discussed at an IVGID board meeting. (Depo. of Beatrice Epstein, 69–70, introduced into evidence at the hearing on Oct. 31, 2008.) It also appears that the District has clarified with the General Manager the limits on his authority. (*Id.*)

With this issue clarified, we return to the text of Policy 136, which contains no permitting or licensing requirement at all: members of the public may exercise their First Amendment rights in the "public forum areas," with no requirement that they

seek a permit or license to do so. On its face, therefore, Policy 136 does not confer unbridled discretion on a permitting or licensing official so as to run afoul of the First Amendment on that issue.

### D. Conclusion

Although Plaintiff has standing to bring a facial challenge to Policy 136, it does not appear that on its face Policy 136 violates the First Amendment. The beach properties are nonpublic fora, except for the designated public fora that were created by Policy 136. The restrictions on speech placed on both the public and nonpublic portions of the beach properties appear consistent, at least on their face, with the First Amendment. The restrictions on the nonpublic areas of the beach properties are viewpoint-neutral and reasonable, and to the extent that Policy 136 restricts speech in the "public forum areas," it imposes only reasonable time, place, and manner restrictions.

In light of this analysis, we conclude that Plaintiff has not made the requisite showing of a probability of success on the merits to entitle him to a preliminary injunction under the traditional test. Plaintiffs Emergency Motion (# 11) seeking an injunction, therefore, will be denied.

### III. Defendants' Motion to Dismiss

Defendants' Motion to Dismiss (# 8) is brought on two bases. First, Defendants argue that this Court does not have subject matter jurisdiction because Plaintiff lacks standing to challenge Ordinance No. 7, which is the basis for Plaintiff's First Amendment claims in his Complaint.[8] They argue that the case therefore should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). Second, Defendants argue that Plaintiff's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join necessary parties.

### A. Subject Matter Jurisdiction

#### 1. Standard

"A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir.1979). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004).

If the moving party converts the motion to dismiss into a factual motion by presenting evidence beyond the complaint, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (internal quotation marks omitted). If, in its discretion, a court finds it necessary, it may hold an evidentiary hearing and make findings of fact necessary to rule on the subject matter jurisdiction question prior to trial. *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir.1987). "In such circumstances, no presumption of truthfulness attaches to the plaintiff's allegations." *Id.* If the court does not hold an evidentiary hearing, however, then it must take the complaint's allegations as true. *See Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1156 (9th Cir. 2007).

#### 2. Analysis

Defendants' motion here is a speaking motion, based on evidence presented by

---

**8.** Although the motion to dismiss also raises parenthetically the issue of ripeness, Defendants have made no argument regarding ripeness separate from the standing issue. We, Loo, will focus our discussion here on standing.

Defendants that the Court lacks subject matter jurisdiction. Specifically, Defendants have submitted two affidavits attached to the Motion to Dismiss (# 8). Plaintiff has moved (# 9) to strike these affidavits. As will be discussed below, however, even if the affidavits are not stricken, but rather taken into account, Defendants' Motion to Dismiss (# 8) would still fail. It will not be necessary, therefore, to reach the merits of Plaintiff's Motion to Strike (# 9).

The affidavit of Ramona Cruz (D.s' Motion to Dismiss (# 8) Ex. A) relates to Plaintiff's Fifth Amendment claims. There is no need, however, to address Defendants' challenges to these claims, because Plaintiff has withdrawn his claims under the Fifth Amendment, omitting them from his Second Amended Complaint.

The affidavit of IVGID General Manager Bill Horn (*id.* at Ex. D) addresses Plaintiff's First Amendment claims, which Plaintiff continues to press. We must examine Mr. Horn's affidavit and Defendants' associated arguments, therefore, in some detail.

Defendants argue that Plaintiff lacks standing to challenge Ordinance No. 7 on First Amendment grounds because there is no evidence that Plaintiff has suffered any injury that is concrete and particularized. Mr. Horn's affidavit supports this assertion by stating that, to the best of his recollection, neither Plaintiff nor anyone else has ever requested access to the beach properties for the purpose of engaging in speech protected by the First Amendment. (*Id.*) Defendants assert that

Plaintiff therefore lacks standing to challenge enforcement of any ordinance excluding him from the beach properties on that basis.

 It does not appear, however, that Mr. Horn's "recollection" is particularly strong evidence of lack of subject matter jurisdiction. Perhaps Plaintiff was denied access, but Mr. Horn was never informed. Perhaps Mr. Horn's recollection fails him. In any case, Plaintiff does submit evidence of his own, in the form of the affidavit of Ronald L. Code, attached to Plaintiff's Motion to Strike (# 9). Mr. Code declares that he and Plaintiff together sought access to the beach properties at issue, explicitly stating to the gate attendants that they sought entry for purposes of engaging in First Amendment activities, on at least one occasion, and they were denied access.[9] Thus, it appears that there is at least some evidence that Plaintiff has been denied access to the beach properties due to his lack of the appropriate recreation pass. Plaintiff therefore has standing to bring a challenge to the ordinance that stands as the obstacle to his obtaining such a recreation pass. Moreover, for many of the same reasons as stated above with regard to Policy 136, Plaintiff has standing to bring a facial challenge to Ordinance No. 7. Defendants' motion to dismiss Plaintiff's First Amendment claims based on lack of standing therefore must be denied.

### B. Failure to Join Necessary Parties

 Defendant's Motion to Dismiss (# 8) next asserts that Plaintiff's Second Amended Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(7) for failure to join all necessary parties. (D.s'

---

9. Defendants argue that Mr. Code's affidavit does not indicate that the gate attendants at the beach areas were informed of Plaintiff and Mr. Code's intent to engage in First Amendment activities, only that Plaintiff and Mr. Code sought entry while wearing t-shirts with political messages on them. Such a reading of the affidavit is not unreasonable. This fact, however, if true, would not deprive Plaintiff of standing. if Plaintiff was denied entry when he had a right to enter, he was injured and has standing to seek redress for that injury.

Motion to Dismiss (# 8) at 11.) Defendants contend that every property owner in IVGID with beach privileges is a necessary party.

"The framework for determining whether a party is necessary and indispensable is provided by Fed.R.Civ.P. 19(a)." *Am. Greyhound Racing, Inc. v. Hull,* 305 F.3d 1015, 1022 (9th Cir.2002). A party is necessary within the meaning of Rule 19 if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED.R.CIV.P. 19(a)(1); *See Pit River Home & Agr. Co-op. Ass'n v. United States,* 30 F.3d 1088, 1099 (9th Cir.1994) ("Based on Rule 19(a), we evaluate whether (1) complete relief is possible among the existing parties and (2) the absent party has a legally protected interest in the outcome of the litigation.").

Defendants do not argue in their Motion to Dismiss (# 8) that the Court could not afford complete relief between the parties under Rule 19(a)(1)(A). Rather, Defendants argue that there are "necessary persons who are not parties to the action whose rights would be impaired or impeded should this Court issue the injunctive relief sought by Plaintiff," an invocation of the second prong of the Rule 19 inquiry described in *Pit River.* In particular, Defendants argue that the rights of those IVGID property owners who benefit from the deed restriction on the beach properties would be affected if the deed restric-

tion were to be ruled unconstitutional. (D.s' Motion to Dismiss (# 8) at 14–15.)

Defendants rely on *Kettle Range Conservation Group v. United States Bureau of Land Management,* 150 F.3d 1083 (9th Cir.1998). In *Kettle Range,* plaintiffs sued the United States Bureau of Land Management ("BLM"), seeking rescission of a contract for the exchange of land between the BLM and private timber companies. *Id.* at 1085. The Ninth Circuit affirmed the decision of the district court that the private timber companies were necessary parties who had not been joined. *Id.* at 1086. Defendants argue that here, as in *Kettle Range,* the legal rights of third parties would be affected if the deed restriction on access to the beach properties were found to be unconstitutional.

*Kettle Range,* however, is distinguishable from the present case. Plaintiff here has explicitly disclaimed any attempt to rescind any contract, or even to seek a ruling regarding the constitutionality of the restriction in the 1968 deeds to the beach properties. Rather, he "premises his attack on the constitutionality of Ordinance Number 7 and the District's policy excluding him from equal access to its publicly-owned property . . . ." (P.'s Opp. (# 12) at 12.) Plaintiff's challenge to Ordinance No. 7 does not require inquiry into the validity of a contract to which the IVGID property owners have a legally enforceable interest. We conclude, therefore, that the IVGID property owners are neither necessary nor indispensable within the meaning of Rule 19.

### IV. Conclusion

Defendants have not demonstrated that the Court lacks subject matter jurisdiction, nor that Plaintiff has failed to join any necessary parties. Plaintiff, on the other hand, has failed to make the appropriate showing under either the traditional or alternative test to justify issuing a preliminary injunction.

*IT IS, THEREFORE, HEREBY OR-DERED THAT* Defendants' Motion to Dismiss Plaintiff's Complaint (# 8) is **DE-NIED.**

*IT IS FURTHER ORDERED THAT* Plaintiff's Motion to Strike (# 9) is **DE-NIED** as moot.

*IT IS FURTHER ORDERED THAT* Plaintiff's Emergency Motion (# 11) for a preliminary injunction against enforcement of Policy 136 on First Amendment grounds is **DENIED** on the following basis: the motion (# 11) and its supplement (# 13) will be treated as supplemental pleadings, and the claims contained therein will be considered a part of this case. The preliminary injunctive relief sought by Plaintiff, however, will not issue.