**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EDWARD GATHRIGHT,
        *Plaintiff-Appellee,*

v.

CITY OF PORTLAND, Oregon, a
municipal corporation; PIONEER
COURTHOUSE SQUARE, INC., an
Oregon nonprofit corporation,
        *Defendants-Appellants.*

No. 04-35402
D.C. No.
CV-03-00130-ALH

EDWARD GATHRIGHT,
        *Plaintiff-Appellee,*

v.

CITY OF PORTLAND, Oregon, a
municipal corporation; PIONEER
COURTHOUSE SQUARE, INC., an
Oregon nonprofit corporation,
        *Defendants-Appellants.*

No. 05-35506
D.C. No.
CV-03-00130-ALH
OPINION

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, District Judge, Presiding

Argued and Submitted
September 14, 2005—Portland, Oregon

Filed February 24, 2006

Before: Raymond C. Fisher, Ronald M. Gould and
Carlos T. Bea, Circuit Judges.

1977

Opinion by Judge Fisher

**COUNSEL**

Harry Auerbach, Office of City Attorney, Portland, Oregon, for the defendants-appellants.

Herbert G. Grey (argued) and Kelly E. Ford, Beaverton, Oregon, and John M. Lotz, Daehnke & Cruz, Irvine, California, for the plaintiff-appellee.

**OPINION**

FISHER, Circuit Judge:

This case concerns the intersection of two First Amendment rights: on the one hand, the classic right of an individual

to speak in the town square; on the other hand, the interest organizations have in not being compelled to communicate messages not of their choosing. Plaintiff Edward Gathright is an evangelical Christian who preaches outdoors to the general public. In recent years, he has taken to doing so in various public locations in the City of Portland, including the Pioneer Courthouse Square and Waterfront Park, and often at privately sponsored, City-permitted events open to the public in those venues. Gathright himself has observed that it is "not unusual" for people hearing his jeremiads "to become upset" or "angry" when, for instance, he calls women "whores," "sluts," "Jezebels," "prostitutes" and "daughters of Babylon" or, at an event celebrating tolerance of homosexuality, he dons a t-shirt reading, "Got AIDS Yet?"

On at least six occasions, Portland's police officers forced Gathright to leave the open events he attended by threatening him with arrest for trespass. They did so not because Gathright violated a public nuisance law or like ordinance, but because Portland enforces the right of permit holders sponsoring an event to evict any member of the public who espouses a message contrary to what the permit holder wants as part of its event. Under Portland City Code ("PCC") 20.08.060, "[i]t is unlawful for any person unreasonably to interfere with a permittee's use of a Park." The criminal trespass statute under which Gathright was excluded defines trespass as remaining unlawfully on the premises of an event after failing to honor a permittee's lawful direction to leave the event. O.R.S. §§ 164.245, 164.205(3)(b). According to the City's policy, a permittee may order a person to leave an open event when that person "unreasonably" interferes with the permittee's use of the licensed space. The police will enforce that order and the attendee's failure to obey the permittee is a Class C misdemeanor under Oregon criminal law.

In January 2003, Gathright brought suit, alleging that his First Amendment rights had been violated by the City of Portland and Pioneer Courthouse Square of Portland, Inc., a pri-

vate nonprofit corporation that manages the Square for the City. The district court applied the test for First Amendment claims relating to government property laid out in *Ward v. Rock Against Racism*, 491 U.S. 781 (1989). The court concluded that the City's enforcement of its permittees' demands to eject Gathright infringed Gathright's First Amendment rights because the City's policy was not narrowly tailored to serve what the court acknowledged to be the City's legitimate interest in "protecting the free speech rights of permittees." The district court granted Gathright a preliminary injunction.[1]

After further proceedings, the district court in April 2004 entered a permanent injunction prohibiting the City from "removing plaintiff and others similarly situated from an area outside or inside of the boundaries under the control of an event permit unless there is probable cause to believe that they have violated a duly enacted statute or ordinance." The court also barred the City from enforcing PCC 20.08.060. The City timely appealed to this court.

Subsequently, the district court granted plaintiff's motion to modify the injunction. The *modified* permanent injunction requires the City to "delete from its event permits the 'Rules of Conduct' section" that contained language authorizing " 'Persons in Charge' to evict or exclude" people from events without probable cause; to notify all event permit holders of the injunction and its provisions; to add a section to event permits that "notifies future permit holders of the court's injunction"; to notify Portland's police officers of the same; and "not [to] place unreasonable time, place, and manner restrictions on plaintiff's speech, or that of others similarly situated

---

[1]The City appealed, and this court affirmed in a memorandum disposition stressing the deferential standard of review of appeals of preliminary injunctions. *See Gathright v. City of Portland*, 74 Fed. Appx. 810, 2003 U.S. App. LEXIS 18838 (9th Cir. Sept. 10, 2003). Our disposition affected only the rights of the parties and remained in force pending the district court's final judgment.

to plaintiff." The City also appealed this modification, and we consolidated the two appeals.

Because the district court properly concluded that the City infringed Gathright's First Amendment rights, we affirm that part of its judgment. However, because the City of Portland has repealed and replaced the provision of the Portland City Code that was the basis of the district court's decision, we vacate the modified permanent injunction and remand to the district court to reconsider it in light of current circumstances.

## I.  STANDARD OF REVIEW

"We review a district court's decision to issue a permanent injunction for abuse of discretion, but we review any determination underlying the court's decision by the standard that applies to that determination." *United States v. Hovsepian*, 359 F.3d 1144, 1156 (9th Cir. 2004) (en banc). When, as here, the injunction turns of a question of law, "we review de novo the district court's injunction." *Id.*

## II.  DISCUSSION

### A.  The First Amendment

Gathright asserts his classic right to preach in the town square. *See, e.g.*, *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 579 (1995) ("Our tradition of free speech commands that a speaker who takes to the street corner to express his views . . . should be free from interference by the State based on the content of what he says."). The City in turn asserts its interest in protecting the right of organizations holding events not to be forced to include the words of a speaker "expressing a message not of the private organizers' own choosing." *Id.* at 566. Gathright's right to speak must be weighed against the City's interest in

protecting its permittees' speech from being diluted by what Gathright says.[2]

The City concedes that Gathright's preaching is a form of expression protected by the First Amendment. It argues, however, that its policy of allowing permittees to exclude people from events in public forums is a valid time, place or manner regulation of public property. In evaluating this proferred justification, we are guided by the Supreme Court's decisions in *Ward* and *Hurley.*

**[1]** *Hurley* held that the State of Massachusetts could not require the organizers of an annual St. Patrick's Day parade to allow an organization in favor of gay rights to march in the parade. The Court explained that "[p]arades are . . . a form of expression" entitled to First Amendment protection, 515 U.S. at 568, and that those who organize parades "ha[ve] the autonomy to choose the content of [their] own message." *Id.* at 573. The Court established that "when dissemination of a view contrary to one's own is forced upon a speaker intimately connected with the communication advanced, the speaker's right to autonomy over the message is compromised." *Id.* at 576. Under the circumstances in *Hurley*, the Court concluded that the organizers of the St. Patrick's Day parade had a First Amendment right not to be compelled to allow the gay-rights organization to march as part of the parade: to do so would have forced the parade's organizers to communicate a message they did not endorse.

---

[2]Gathright argues that he as a private actor cannot infringe the permittees' speech rights inasmuch as the First Amendment applies against government action only. However, because Gathright has obtained an injunction that restricts the City's permittees from exercising their purported First Amendment rights, and because an injunction constitutes state action, it is proper for us to conduct a First Amendment analysis. *See Shelley v. Kraemer*, 334 U.S. 1, 15 (1948); *see also Cohen v. Cowles Media Co.*, 501 U.S. 663, 668 (1991).

The City argues that *Hurley* requires us to vacate the district court's injunction because the City's policy of evicting on request those who express messages the permittees disapprove of is a valid time, place or manner restriction. In support of its argument, the City marshals three points: first, its policy serves the legitimate, content-neutral interest it has in protecting permittees' right under *Hurley* to determine the contents of their own messages; second, the policy is narrowly tailored to that interest because it "limits only that speech which permittees have a right to exclude"; and third, Gathright has ample alternative channels of communication. *See Ward*, 491 U.S. at 791.

**[2]** We disagree with the City's reading of *Hurley*. *Hurley* involved the exclusion of those who wished to *participate* in the parade as marchers, not those who witnessed or opposed the procession. *Cf. Mahoney v. Babbit*, 105 F.3d 1452, 1456 (D.C. Cir. 1997) (refusing to extend *Hurley* to allow parade organizers to exclude people wishing to stand along parade route holding protest signs). As the district court has here observed, "[t]here is a distinction between participating in an event and being present at the same location. Merely being present at a public event does not make one part of the organizer's message for First Amendment purposes." *Gathright v. City of Portland*, 315 F. Supp. 2d 1099, 1103 (D. Or. 2004).

**[3]** Applying *Ward*'s criteria to the facts before us, we conclude that the City's policy is not a valid time, place or manner regulation of public space. *See Ward*, 491 U.S. at 791. Solely for the purposes of the City's appeal, we accept its proposition that its policy is content neutral and that it has a significant interest in protecting the free speech rights of people and organizations who have obtained permits to use a public park for an event open to the public.[3] We hold, however,

---

[3]The City's assertion that its policy is content neutral is questionable. The policy enables private citizens to exclude people from events in public forums solely on the basis of the content of their speech. However, because Gathright has conceded the City's assertion of content neutrality as well as its substantial interest in protecting permittees' speech, we accept both as true for purposes of this appeal.

that the policy of allowing permittees unfettered discretion to exclude private citizens on any (or no) basis is not narrowly tailored to the City's legitimate interest in protecting its permittees' right under *Hurley*. *See Ward*, 491 U.S. at 798-800. Because the City's policy is not narrowly tailored, we do not reach whether it leaves open ample alternative channels of communication.

**[4]** *Hurley* does not, by its own terms, extend to these circumstances, where a speaker in a public forum seeks only to be heard, not to have his speech included or possibly confused with another's, and has not violated a valid statute or ordinance. In *Hurley*, the Supreme Court made clear that every marching participant in the St. Patrick's Day parade was an expressive unit, the sum of which constituted the expressive message attributable to the parade's organizer. 515 U.S. at 574. The inclusion in the parade of the Irish-American Gay, Lesbian and Bisexual Group of Boston "would likely be perceived as having resulted from the [organizers'] customary determination about a unit admitted to the parade, that its message was worthy of presentation and quite possibly of support as well." *Id.* at 575. "[I]n the context of an expressive parade, as with a protest march, the parade's overall message is distilled from the individual presentations along the way, and each unit's expression is perceived by spectators as part of the whole." *Id.* at 577. Here, there is no risk that Gathright's provocations could be mistaken by anybody as part of the message of the events he protests. For this reason, the City's citation of *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000), is also unavailing. In *Dale*, the Supreme Court extended *Hurley* to hold that the Boy Scouts could not be forced by a state antidiscrimination statute *to employ* a homosexual scoutmaster because the act of doing so would send a message contrary to the Boy Scout's creed. *Id.* at 656. *Dale*'s holding, like *Hurley*'s, was grounded in whether the plaintiff's views could be mistaken for those of the defendant.

Gathright may be a gadfly to those with views contrary to his own, but First Amendment jurisprudence is clear that the

way to oppose offensive speech is by more speech, not censorship, enforced silence or eviction from legitimately occupied public space. *See Terminiello v. City of Chicago,* 337 U.S. 1, 4 (1949) ("[A] function of free speech under our system of government is to invite dispute."). The City has not argued that Gathright violated any ordinance other than PCC 20.08.060, and the district court's injunction did not limit the City's ability to evict Gathright from events in public forums where there is probable cause to believe that he violated a different, valid statute or ordinance. *See, e.g.*, *Virginia v. Black*, 538 U.S. 343, 363 (2003) (allowing regulation of cross burning as subset of intimidating speech); *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 572 (1942) (holding that states may punish those words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace").

We find persuasive the reasoning of the Sixth Circuit in a case with facts similar to these. In *Parks v. City of Columbus*, 395 F.3d 643, 654 (6th Cir. 2005), the court held that a municipality could not evict a controversial street preacher from a permitted event held on a public street simply because the event's organizers found the preacher's message to be odious. Our sister circuit distinguished *Hurley*, as we do, on the basis that Parks, like Gathright, "d[id] not seek inclusion in the speech of another group." *Id.* at 651. Instead, he was "merely another attendee" of a permitted event open to the public, in a public forum. *Id.* Correspondingly, we find *Sistrunk v. City of Strongsville*, 99 F.3d 194 (6th Cir. 1996), a Sixth Circuit case the City cites, to be distinguishable. In *Sistrunk*, the event at issue was a closed political rally in favor of the incumbent president, President George H. W. Bush. *Id.* at 196. The rally was not open to the public, but was instead "limited to the members of the organization and their invitees." *Id.*; *see also Parks*, 395 F.3d at 651. Because the protester supporting the challenger, Governor Bill Clinton, sought to be included in the message of a closed rally favoring President Bush, and presumably to affect the media cover-

age of the event, the protester threatened to infringe the speech rights of those who organized the rally. *Sistrunk*, 99 F.3d at 199-200. Such circumstances differ from those here, where Gathright does not seek inclusion in a closed event strictly "limited to the members of [an] organization and their invitees." *Id.* at 196. "The City cannot . . . claim that one's constitutionally protected rights disappear [where] a private party is hosting an event that remain[s] free and open to the public." *Parks*, 395 F.3d at 652.

[5] Because PCC 20.08.060 is not narrowly tailored to the City's interest in protecting its permittees' right under *Hurley*, we affirm the district court's conclusion that the ordinance is not a valid time, place or manner regulation.

### B.   The District Court's Injunction

Having found the district court's underlying analysis correct, we review the court's injunction for abuse of discretion. *See United States v. Hovsepian*, 359 F.3d 1144, 1156 (9th Cir. 2004) (en banc).

#### 1.   *Enjoining Eviction Based on Activity Outside Event Areas*

The City argues that the district court abused its discretion by entering an injunction partly premised on the assumption that Gathright was threatened with arrest when he engaged in protected speech at the periphery of a permitted event, in particular, the sidewalks within Waterfront Park, the traffic island on Naito Parkway and the sidewalks around Pioneer Courthouse Square. The City contends there is conflicting evidence as to whether Gathright was prevented from being in close proximity to an event based on things he said outside the precise confines of the permit area, and that it was error to grant Gathright summary judgment on this issue.

[6] Irrespective of whether Gathright had in fact been excluded from events based on his speech outside the venues'

bounds, the district court saw fit to specify that Gathright could not be so excluded in the future. In light of the district court's correct First Amendment analysis, it did not abuse its discretion. Moreover, any lack of certainty about Gathright's conduct outside of events was immaterial to the district court's correct finding that the City's ordinance was not a valid time, place or manner regulation. Consequently, the district court did not err in granting summary judgment on *that* issue since there was no dispute as to a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### 2.  *Enjoining Enforcement of PCC 20.08.060*

PCC 20.08.060 is entitled "Unlawful Interference." As previously noted, it provides that "[i]t is unlawful for any person unreasonably to interfere with a permittee's use of a park." In *City of Portland v. Lee*, No. 9907-46965 (Nov. 22, 1999), the Multnomah County Circuit Court found PCC 20.08.060 unconstitutional under *Ward*'s narrow-tailoring prong because the ordinance was broad and vague as to what an "unreasonable" interference might be: "the ordinance's use of the phrase 'unreasonably to interfere' is far too broad to not sweep into its reach any protected speech which any permittee, user, guard or police officer concludes might be unreasonable." The City did not appeal that determination.

Notwithstanding the judgments of the state court and district court that PCC 20.08.060 is invalid, the City argues that the district court abused its discretion in enjoining the City from enforcing the ordinance. It asserts that Gathright failed to adduce evidence proving that the City had enforced, or was likely to enforce, the provision against him, and that Gathright therefore lacked standing to assert the unconstitutionality of the provision. The City further contends that it is not precluded from arguing in this action that the ordinance is constitutional, regardless of the state court's determination.

These arguments are without merit. First, in addition to the citations for trespass and other violations, the record contains

a "Notice of Exclusion" and "Trespass Warning" that cites Gathright for "Interference with Permitted Events." The language in this exclusion, completed by a Portland police sergeant, refers to PCC 20.08.060. Such evidence belies the City's assertion that Gathright lacks standing.

[7] Second, the City is in any case estopped from relitigating the constitutionality of PCC 20.08.060. 28 U.S.C. § 1738 requires a federal court to "give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986). The Oregon state court's judgment, which the City did not appeal, precludes the City from arguing now that the ordinance's restriction against unreasonable interference is not unconstitutionally overbroad. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."). Nor is there an exceptional circumstance here that warrants relitigating this issue. *See Restatement (Second) of Judgments* § 29 (1982); *see also Drews v. EBI Cos.*, 795 P.2d 531 (Or. 1990) (Supreme Court of Oregon applying *Restatement (Second) of Judgments* as Oregon law on issue preclusion). Because the City was a party to the proceedings in state court and had "a full and fair opportunity to litigate" the ordinance's constitutionality in that forum, *Montana v. United States*, 440 U.S. 147, 153 (1979), it cannot do so again here, and the district court did not err in barring the City from enforcing the ordinance.[4]

---

[4]Because the City is collaterally estopped from litigating this issue, we do not reach whether it is alternatively barred from doing so under the *Rooker-Feldman* doctrine. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) (clarifying *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)).

### 3.  *The Modifications to the Injunction*

The City has separately appealed the modifications that the district court made to its permanent injunction. The City argues that the district court abused its discretion, because the more recent permitted events that led to the modifications were "gated and fenced, and the permittees controlled entry into those events." The City asserts that these events were outside the scope of the original complaint, which only concerned events free and open to the public, and that the modified injunction is thus invalid. Gathright argues in response that the more recent events were open to the public. Notwithstanding the parties' contrary views, the district court's modifications did not expand the prior injunction's scope to "gated and fenced" events. We therefore see no reason to hold the injunction invalid on that basis and decline to determine, on the limited record before us, whether the injunction would be invalid if it did apply to such events.

We do consider whether the district court otherwise abused its discretion in making the modifications. The injunction as modified now requires the City to "delete from its event permits the 'Rules of Conduct' section." Read in the context of this case, the instruction means that the City must delete the rule that bestows the right on permittees to exclude people arbitrarily. However, the City is correct that a literal reading of the injunction could lead one to conclude that the City must not have *any* rules of conduct printed on its permits. Because this would be an abuse of discretion and cannot have been the district court's intent, we construe the modification so as to avoid the absurd result contemplated by the City. In this light, we hold that the district court did not abuse its discretion.

The modified injunction also states that:

> [T]he City and all permit holders are ordered to not place unreasonable time, place, and manner restrictions on plaintiff's speech, or that of others similarly

situated to plaintiff. For example, neither the City nor any permit holder shall remove or exclude plaintiff or others similarly situated from an area within a permitted event unless plaintiff or others are causing an insurmountable impediment to pedestrian or vehicular traffic, such that a serious traffic safety concern is present.

The injunction then mandates that "[n]either the City nor any permit holder shall prevent plaintiff or others similarly situated from wearing signs or passing out pamphlets." These provisions, like the one discussed in the preceding paragraph, could be read to occasion absurd consequences contrary to the district court's intent and irrelevant to the constitutional concerns in this dispute. For instance, the court's reference to an "impediment to pedestrian or vehicular traffic" could be literally interpreted so that it prevents the City from evicting an attendee at an event who violates a legitimate statute, but who does so without causing a sufficiently "insurmountable" impediment to traffic. Similarly, the modified injunction could be construed to enjoin the City from preventing "plaintiff or others similarly situated from wearing signs or passing out pamphlets," notwithstanding that we have upheld instances in which a state has validly prohibited the use of certain kinds of signs. *See, e.g.*, *Vlasak v. Superior Court of California*, 329 F.3d 683 (9th Cir. 2003) (upholding Los Angeles ordinance prohibiting the possession, during demonstrations, of wooden objects exceeding certain thickness).

[8] The district court enjoys ample latitude to fashion an injunction appropriate to the facts before it. In this case, the court appears to have determined that more forceful language was necessary to ensure the City's compliance with the court's constitutional analysis. We do not read the district court's injunction in such a way as to bind the City in ways unwarranted by the constitutional issues underlying this dispute. Accordingly, the modifications do not require us to vacate the injunction in whole or part. However, because the

Portland City Council repealed and replaced PCC 20.08.060 by Ordinance No. 179337, effective June 15, 2005, we remand to the district court to reconsider the appropriateness of its injunction — particularly those parts of it that concern former PCC 20.08.060 — in light of recent developments. At that time, the district court may take into consideration the potential ambiguities in its injunction as currently written.

Therefore, we **AFFIRM** the district court's judgment, but **VACATE** and **REMAND** its modified permanent injunction for further proceedings in light of our opinion. The parties shall bear their own costs.