NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0093n.06

Case No. 18-1116

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

PAUL JOSEPH HARCZ, JR., ELEANOR
CANTER, BRIAN DIAN, MARK EAGLE,
TERRY EAGLE, DAVID ROBINSON, and
JOSEPH SONTAG,

  Plaintiffs-Appellants,

v.

BRODY BOUCHER, JASON WILLIAMS,
JEFF HELD, EDWIN HENRIQUEZ, BRIAN
GEORGE, RYAN DAVIS, STEPHEN
THOMAS, KEVIN COOK, VINCENT
MUNOZ, DAN BROCKLEHURST, all
defendants sued in their personal capacities,
MICHIGAN ASSOCIATION OF CENTERS
FOR INDEPENDENT LIVING,
HANDICAPPER ADVOCACY ALLIANCE,
INC.,

  Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF
MICHIGAN

BEFORE: SILER, COOK, and BUSH, Circuit Judges.

COOK, Circuit Judge. The state police prevented Paul Joseph Harcz and a group of disability-rights advocates from entering an event celebrating the passage of the Americans with Disabilities Act ("ADA") on the Michigan State Capitol grounds, first stopping them at a checkpoint and eventually arresting Harcz for attempting to force his way into the event. The

group sued several state officers and the private event planners, alleging First and Fourteenth Amendment violations under 42 U.S.C. § 1983.  Harcz also alleged claims of false arrest, false imprisonment, and malicious prosecution under the Fourth Amendment and state law.  The district court dismissed all claims on the pleadings.  We AFFIRM dismissal of the claims against the private defendants and the Fourteenth Amendment claim against all defendants.  But because the appellants plausibly allege First Amendment violations against the state defendants and the case requires further factual development to resolve qualified immunity, we REVERSE dismissal of the First Amendment claim and Harcz's individual claims.

**I.**

In 2014, private parties began planning an event to commemorate the twenty-fifth anniversary of the ADA.  They secured a permit to hold the celebration on the east side of the Michigan State Capitol on September 17, 2015, and advertised the event as "free and open to the public."  The plaintiffs-appellants in this case, most physically disabled, knew about the event; Harcz, in fact, directly participated in its planning, serving on the accommodations committee.

Though eager to celebrate the ADA anniversary, the plaintiffs also harbored misgivings about certain aspects of the celebration.  In particular, they questioned the propriety of the sponsorship by an employer said to pay disabled employees sub-minimum wages and choosing as the venue the State Capitol building that—in their opinion—violated the ADA. They relayed these concerns to Sara Grivetti, the event's chief organizer and CEO of the Michigan Association of Centers for Independent Living ("MACIL"), who then speculated with fellow event planners that the plaintiffs might protest and disrupt the event.

In the days leading up to the celebration, the organizers notified the Michigan State Police that protestors might disrupt the event. Grivetti spoke with an officer about the plaintiffs' objection

to one of the event's sponsors and expressed concern about disruption. She also communicated with the facilities director for the Capitol about potential protests. Ellen Weaver, another event planner and representative for the Handicapper Advocacy Alliance, Inc. ("HAAI"), similarly contacted the police and expressed concern about disruption from protestors. The plaintiffs allege that on the morning of the event, Grivetti and Weaver met with the police and again communicated their desire to prevent disruption. They allege that the police "agreed" with Grivetti and Weaver that officers would exclude suspected protestors from the event and prevent them from passing beyond the Austin Blair statue on the Capitol grounds.

On the day of the event, the plaintiffs assembled on a street corner adjacent to the Capitol carrying handmade signs, a banner, and leaflets for distribution. An officer approached and told them they could not pass the statue. The plaintiffs insisted that they did not want to cause a disturbance and merely sought to "peacefully . . . share their views on issues important to them." When the group of about fifteen to twenty attempted to enter the event, the police blocked their path. Later, the officers erected metal barricades across the sidewalk leading up to the event, approximately 130 feet from the stage, preventing the plaintiffs from entering.

Harcz, legally blind and using a walking stick, eventually attempted to circumvent the barricades. Following a scuffle, the police arrested Harcz and held him in the Capitol for the duration of the ADA celebration. In state court, a judge found probable cause that Harcz obstructed the officers, but the prosecutor dropped Harcz's felonious assault charge before trial.

The plaintiffs filed this action in district court against individual police officers, the Capitol facilities director, MACIL, and HAAI, alleging First and Fourteenth Amendment violations under 42 U.S.C. § 1983. Harcz also alleged claims of false arrest, false imprisonment, and malicious prosecution against several officers under the Fourth Amendment and state law. The various

defendants moved to dismiss and for summary judgment, and the district court dismissed all claims under Federal Rule of Civil Procedure 12(b)(6).

The district court addressed the plaintiffs' claims in three parts. It first found that the plaintiffs could not sustain a § 1983 claim against the private defendants, MACIL and HAAI, because they failed to allege facts showing a civil conspiracy with the police. Second, it held that qualified immunity protected the state defendants because "sufficient daylight" existed between the circumstances of the ADA event and those in similar cases on which the defendants might have relied. Finally, it dismissed Harcz's individual claims, independently finding that his actions provided adequate grounds for probable cause supporting arrest. The plaintiffs appealed.

## II.

We review de novo a district court's dismissal of a complaint under Rule 12(b)(6). *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 358 (6th Cir. 2012). To survive a motion to dismiss, a plaintiff must "allege[] facts that 'state a claim to relief that is plausible on its face' and that, if accepted as true, are sufficient to 'raise a right to relief above the speculative level.'" *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We must read the complaint "in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

### A. Conspiracy Between the Private and State Defendants

The district court dismissed the appellants' claims against the private defendants, MACIL and HAAI, because it found that the appellants failed to allege sufficient facts to establish a

conspiracy between the private and state defendants. On de novo review, we agree that the complaint fails to allege facts supporting the reasonable inference, absent speculation, that the private defendants conspired with the police to violate the appellants' rights.

A § 1983 claim must satisfy two requirements, plausibly stating: "1) the deprivation of a right secured by the Constitution or laws of the United States and 2) [that] the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995)). The appellants here contend that the private defendants fall under a state-action exception whereby "[i]f a private party has *conspired* with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983." *Cooper v. Parrish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000) (emphasis added).

Two or more individuals conspire when they agree to injure another by unlawful action. *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985). To prevail on a civil conspiracy claim, a plaintiff must show "[1] that there was a single plan, [2] that the alleged coconspirator shared in the general conspiratorial objective, and [3] that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Id.* at 944. "[P]leading requirements governing civil conspiracies are relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

The complaint alleges that Grivetti and Weaver independently contacted the police to express concern about disruption in the days leading up to the event, that Grivetti and Weaver then met with Sgt. Jeff Held of the state police on the morning of the event, and that Sgt. Held "agreed with [Grivetti and Weaver] that [he] would cause the [police] to exclude anyone that they believed were protestors from the ADA event." R. 1, PageID 9–11. In dismissing the appellants' claims

against MACIL and HAAI, the district court reasoned that the allegations in the complaint failed to make out an agreement with a shared objective. We agree.

The appellants have not pleaded facts sufficient to nudge their conspiracy theory beyond the speculative. True, the complaint alleges more than the conclusory allegations we routinely deem deficient. *See, e.g.*, *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563–64 (6th Cir. 2011) ("The only paragraph in which [the plaintiff] discusses conspiracy is vague and consists primarily of legal conclusions . . . ."); *Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009) (plaintiff's conspiracy claims each "offer[ed] nothing more than one conclusory allegation"). But the allegations still fail to support the inference that the private and state defendants engaged in a single plan of action. *See Hooks*, 771 F.2d at 944. Though the appellants use the word "agreed" in their complaint, the substantive allegations describe Grivetti and Weaver merely relaying their concerns about disruption to the police. *See Twombly*, 550 U.S. at 555 (stating that the complaint must contain "more than labels and conclusions"). Indeed, the complaint itself supports the inference that the state defendants formed their plan to handle protestors independently, alleging that the police developed an "operational plan" and made the decision to deploy officers on their own, before meeting with Grivetti and Weaver on the day of the event. R. 1, PageID 10. The police officers' decision to inform Grivetti and Weaver about their plan—without soliciting any input whatsoever—does not rise to the level of conspiracy.

Furthermore, the district court rightly noted that imposing liability on the private defendants here might deter private citizens from reaching out to the police with concerns. Even reading the complaint in the light most favorable to the appellants, Grivetti and Weaver did little more than contact the police and then check in with them before the start of the event. We cannot

impose liability here without sending a clear message to think twice before notifying the police about a concern.

We affirm the dismissal of the § 1983 claims against MACIL and HAAI.

### B. Qualified Immunity on the Alleged First Amendment Violation

The district court held that qualified immunity protected the state defendants against the appellants' claims because the available precedent failed to clearly establish the unlawfulness of their actions at the ADA event. We disagree in part. Because the appellants plausibly allege a First Amendment violation and the case requires further factual development to evaluate whether the state defendants acted reasonably and competently under the circumstances, we reverse dismissal of the First Amendment claim.

Although we endeavor to resolve qualified immunity "at the earliest possible stage," *Hunter v. Bryant*, 502 U.S. 224, 227 (1991), "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity," *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) (collecting cases). Moreover, we have decided cases considering analogous First Amendment issues well after the pleading stage. *See, e.g.*, *Saieg v. City of Dearborn*, 641 F.3d 727, 730 (6th Cir. 2011) (reversing grant of summary judgment to city because its restriction on distributing material at a public festival violated pastor's free speech rights); *Parks v. City of Columbus*, 395 F.3d 643, 645–47 (6th Cir. 2005) (reversing denial of demonstrator's preliminary injunction after bench trial because the city violated his speech rights by excluding him from a public festival); *see also Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) (affirming grant of summary judgment to city because it enforced a valid speech restriction against protestors at a public festival). This case presents no reason to depart from that consistent practice. At this stage, the appellants plausibly allege a First Amendment violation

because they claim that the state defendants prevented them from accessing a traditional public forum to exercise their speech rights before they posed any concrete threat of disruption.

Qualified immunity shields the discretionary actions of government officials so long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity inquiry proceeds in two familiar steps, the first asking whether the plaintiff alleged facts in the complaint that make out a constitutional violation and the second asking whether existing precedent "clearly established" the right at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). To violate a clearly established right, courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

*Constitutional violation.* When read in the light most favorable to the appellants, the complaint plausibly alleges that the state defendants, without a compelling justification, violated their First Amendment rights by blocking access to the event. "The First Amendment offers sweeping protection that allows all manner of speech to enter the marketplace of ideas." *Bible Believers v. Wayne Cty.*, 805 F.3d 228, 243 (6th Cir. 2015) (en banc). Three considerations underlie any determination of whether a defendant violates a plaintiff's First Amendment rights: (1) "whether the plaintiff's conduct is protected speech"; (2) "the nature of the forum"; and (3) "whether the justifications for exclusion from the relevant forum satisfy the requisite standard." *Saieg*, 641 F.3d at 734–35 (citations omitted). Here, the parties agree that the appellants engaged in protected speech and that the Michigan State Capitol grounds constitute a public forum. We focus, then, on the defendants' justification for the restriction. In a traditional public forum, the government may impose reasonable time, place, and manner restrictions on speech "as long as the

restrictions 'are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" *United States v. Grace*, 461 U.S. 171, 177 (1983) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)).

The state defendants argue that stopping the appellants at the Austin Blair statue constituted a reasonable time, place, and manner restriction serving the acceptable purposes of "crowd control and public safety" and preventing a "heckler's veto." *See Hill v. Colorado*, 530 U.S. 703, 719–20 (2000); *Parks v. Finan*, 385 F.3d 694, 698–706 (6th Cir. 2004). But, at the pleading stage, the complaint defeats these asserted interests, averring that the small group of protestors sought to "peacefully . . . share their views" and "did not intend to make a disturbance." R. 1, PageID 11– 13. And the defendants here "must do more . . . than 'assert[] interests [that] are important in the abstract.'" *See Saieg*, 641 F.3d at 736–37 (quoting *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664 (1994)) (rejecting asserted government crowd control and safety interests when government restricted only some of the numerous activities implicating those interests). Accepting the complaint's allegations as true—as we must—the appellants posed no threat of disruption before the police excluded them from the event. Thus, when the police imposed the restriction, the asserted interests of crowd control, safety, and preventing a heckler's veto "[were] merely 'conjectural,' as opposed to 'real.'" *Id.*

The state defendants argue that video evidence submitted in support of their motion to dismiss supplies proof of disruptive conduct by the appellants justifying the restriction.[1] But the videos show only the appellants' conduct *well after* the police denied them access to the event.

---

[1] The appellants do not object to our relying on the video evidence.

They therefore fail to support the conclusion that the appellants caused or intended to cause a disturbance *before* the police excluded them.

Absent a significant government interest, the state defendants could not be said to be enforcing a reasonable time, place, and manner restriction when they denied the appellants access to a traditional public forum.[2] *See Grace*, 461 U.S. at 177; *Saieg*, 641 F.3d at 740 ("The requirements for a time, place, and manner restriction are conjunctive."). Thus, the complaint sufficiently alleges a First Amendment violation.

*Clearly established right.* Accepting the allegations in the complaint, precedent clearly established that the state defendants violated the appellants' First Amendment rights. Over ten years before the events in this case, *Parks* established that "one's constitutionally protected rights" do not "disappear because a private party is hosting an event that remain[s] free and open to the public." 395 F.3d at 652; *see also Teesdale v. City of Chicago*, 690 F.3d 829, 834 n.1 (7th Cir. 2012) (citing *Parks*); *Gathright v. City of Portland*, 439 F.3d 573, 578–79 (9th Cir. 2006) (same). As a result, cases stretching back decades requiring that a significant government interest support a valid time, place, and manner restriction controlled here. *See Perry Educ. Ass'n.*, 460 U.S. at 45 (collecting cases). In addition, previous decisions of this court and the Supreme Court clarify that the government must demonstrate the reality of an asserted interest when justifying speech restrictions and that mere conjecture will not suffice. *See Turner*, 512 U.S. at 664; *Saieg*, 641 F.3d at 736–37; *Bays v. City of Fairborn*, 668 F.3d 814, 823–24 (6th Cir. 2012).

---

[2] Although the absence of a significant government interest alone defeats the validity of the state defendants' purported time, place, and manner restriction at this stage, *Saieg*, 641 F.3d at 740, we note that the questions of content neutrality, narrow tailoring, and ample alternative channels of communication remain open.

Moreover, *Startzell v. Philadelphia*, an analogous case that the district court discussed at length, provided a blueprint for proper police action under the circumstances. *See* 533 F.3d at 198–99. There, the officers allowed protestors to enter a permitted event held in a public forum and imposed a constitutionally-permissible restriction only *after* "protestors move[d] from distributing literature and wearing signs to disruption of the permitted activities." *Id.* at 199. Accepting the appellants' allegations as true, these cases placed the state defendants' constitutional violation beyond debate. *See al-Kidd*, 563 U.S. at 741. We therefore reverse dismissal of the appellants' First Amendment claim.

### C. The Alleged Fourteenth Amendment Violation

Because the appellants abandon their Fourteenth Amendment claim on appeal by making no standalone equal protection argument, we affirm dismissal of that claim. *See Boyd v. Ford Motor Co.*, 948 F.2d 283, 284 (6th Cir. 1991).

### D. Harcz's Individual Claims

Finally, the district court dismissed Harcz's individual state and federal claims of false arrest, false imprisonment, and malicious prosecution, finding that his actions provided adequate grounds to establish probable cause supporting arrest. Viewing the complaint and available materials in the light most favorable to Harcz, we disagree and reverse.

The officers renew their argument, rejected by the district court, that the state court's probable cause finding collaterally estops Harcz from contesting probable cause in this § 1983 action. *See Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987) ("[W]here the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action."), *overruled on other grounds by Frantz*

*v. Vill. of Bradford*, 245 F.3d 869, 874 (6th Cir. 2001). But as the district court correctly observed, a prior probable cause finding does not prevent a plaintiff from relitigating probable cause where the plaintiff claims that the witness who testified at the state proceeding misstated or knowingly misrepresented the facts used to establish probable cause. *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001). Here, Harcz has done just that, alleging that "Sgt. Edwin Henriquez . . . provided false and misleading testimony at the probable-cause hearing." R. 1, PageID 23.

A plaintiff can bring malicious prosecution claims against police officers if the plaintiff alleges, as Harcz does, that a misleading police report influenced the state court's determination of probable cause for arrest and prosecution. *See Darrah*, 255 F.3d at 312; *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007); R. 1, PageID 23. Like all of Harcz's individual claims, a malicious prosecution claim requires the absence of probable cause, *Fox*, 489 F.3d at 237, and a probable cause determination depends on whether, at the moment of arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense," *Beck v. Ohio*, 379 U.S. 89, 91 (1964). If the court independently finds that probable cause supported prosecution, the plaintiff cannot make out a malicious prosecution claim regardless of any alleged false statements made by an officer. *Darrah*, 255 F.3d at 312. Whether probable cause exists presents a jury question "unless there is only one reasonable determination possible." *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000)).

The district court reviewed video evidence submitted in support of the defendants' motion to dismiss and found that Harcz's actions supplied ample grounds to establish probable cause in

support of arrest, thus defeating each of his claims.[3]  Harcz argues to the contrary—that his blindness explains his physical behavior at the ADA event and that he did not threaten violence or pose a risk of harm.  He alleges that while feeling around the barricade with his cane, the police "grabbed [him] by one arm and pulled [him] across."  R. 1, PageID 15.  Viewed in the light most favorable to Harcz, the videos fail to conclusively rebut that explanation.  The district court acknowledged as much when it stated: "[w]hether [Harcz] was aggressively pushing against the police officers, or the officers initiated the physical contact by aggressively pulling him through and handcuffing him, is not readily apparent in the videos."  R. 47, PageID 630.  Nor do the videos clearly show Harcz battering officers with his cane.  With more than one reasonable determination possible, the probable cause finding should not occur at the pleading stage.  *See Radvansky*, 395 F.3d at 302.  We reverse dismissal of Harcz's individual state and federal claims.

Moreover, in light of our First Amendment holding, Michigan law entitled Harcz to resist his alleged unlawful arrest.  *People v. Moreno*, 814 N.W.2d 624, 628 (Mich. 2012) ("[T]he right to resist *unlawful* arrests, and other *unlawful* invasions of private rights, is well established in our state's common law.").  Assuming the truth of the appellants' allegations—that the police restricted their access before they posed a concrete threat of disruption and that Harcz did not batter the officers—*Moreno* protects Harcz's refusal to obey police orders.

Because the district court resolved Harcz's individual claims with an independent probable cause finding, it failed to reach the officers' governmental immunity defense to the state-law

---

[3] The appellants do not dispute the district court's reliance on the video evidence. Moreover, at the motion to dismiss stage we may review "items appearing in . . . exhibits attached to [a] defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  The videos meet these criteria.

claims and qualified immunity arguments regarding the Fourth Amendment claims. We remand to the district court to make determinations on those issues in the first instance.

### III.

In sum, we AFFIRM dismissal of the claims against the private defendants, AFFIRM dismissal of the Fourteenth Amendment claim, and REVERSE dismissal of the First Amendment claim and Harcz's individual claims.